**ORAL ARGUMENT NOT YET SCHEDULED**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

——————

**No. 22-5093**

——————

ADAM ROBINSON,
*Appellant*,

v.

DEPARTMENT OF HOMELAND SECURITY
OFFICE OF INSPECTOR GENERAL,
*Appellee.*

——————

BRIEF FOR APPELLEE

——————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

——————

MATTHEW M. GRAVES
United States Attorney

R. CRAIG LAWRENCE
Assistant United States Attorney

JANE M. LYONS
Assistant United States Attorney
601 D Street, N.W. – Seventh Floor
Washington, D.C. 20530
(202) 252-2540
Jane.Lyons@usdoj.gov

C.A. No. 20-2021

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

<u>Parties and Amicus Curiae</u>

Appellant is Adam Robinson, who was the plaintiff in the District Court. Appellee is the Department of Homeland Security's Office of Inspector General, which was the defendant below and Robinson's former employer.

There was and are no *amici curiae*.

<u>Ruling Under Review</u>

At issue in this appeal is the March 10, 2022, Order and Memorandum Opinion of the Honorable Christopher R. Cooper granting defendant's motion to dismiss for lack of jurisdiction. *See* JA76-84.

<u>Related Cases</u>

This case has not previously been before this Court. Undersigned counsel is unaware of any pending related cases.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES .............. i

TABLE OF CONTENTS .......................................................................... ii

TABLE OF AUTHORITIES ................................................................. iv

GLOSSARY ......................................................................................... vii

RELEVANT STATUTE ...................................................................... viii

STATEMENT OF JURISDICTION ....................................................... 1

STATEMENT OF THE ISSUES ............................................................ 1

STATEMENT OF THE CASE ............................................................... 2

STATEMENT OF FACTS ..................................................................... 4

    A.    Robinson's Employment by the Inspector General and Administrative Challenges to Its Decision to Terminate His Employment ................... 4

    B.    District Court Proceedings ........................................................ 6

    C.    The District Court's Decision ................................................... 8

SUMMARY OF ARGUMENT ............................................................. 10

ARGUMENT ....................................................................................... 13

    A.    Robinson Is Not Entitled To Equitable Tolling. ................................. 14

        1.    Applicable Legal Standards for Equitable Tolling and Appellate Review ................................................................ 15

        2.    The District Court Correctly Found the Record in This Case Does Not Support Equitable Tolling. ....................................... 18

B.     Even Were Equitable Tolling Warranted, the Court Should Not Overrule *King* Through An *Irons* Footnote. ........................................29

   1.     Standard of Review, Applicable Statute, and Controlling Precedent ...................................................................................29

   2.     The Court Should Not Overrule *King* Using an *Irons* Footnote. ...................................................................................30

   3.     An *Irons* Footnote Is Unwarranted Because the Authorities Appellant Cites Are Outweighed by *Stare Decisis* Based on *Lindahl* As Well As Other Decisions By this Court Applying Section 7703(b). ........................................................................33

CONCLUSION ....................................................................................36

CERTIFICATE OF COMPLIANCE (FED. R. APP. P. 32(G)(1)) ........................37

CERTIFICATE OF SERVICE ..............................................................37

# TABLE OF AUTHORITIES

## Federal Cases

*Anderson v. Bessemer City,*
    470 U.S. 564 (1985) ...............................................................................17

*Babb v. Wilkie,*
    140 S. Ct. 1168 (2020) ...........................................................................34

\* *Baldwin Cnty. Welcome Ctr. v. Brown,*
    466 U.S. 147 (1984) ...............................................................................21

*Benoit v. Dep't of Agric.,*
    608 F.3d 17 (D.C. Cir. 2010) .................................................................30

\* *Bowden v. United States,*
    106 F.3d 433 (D.C. Cir. 1997) ...............................................................18

*Brookens v. Acosta,* 297 F. Supp. 3d 40 (D.D.C. 2018),
    2018 WL 5118489 (D.C. Cir. Sept. 19, 2018) .......................................26

*Butler v. West,*
    164 F.3d 634 (D.C. Cir. 1999) ...............................................................32

*Coal River Energy, LLC v. Jewell,*
    751 F.3d 659 (D.C. Cir. 2014) ...............................................................13

*Dean v. Veterans' Admin. Reg'l Off,* 943 F.2d 667 (6th Cir 1991) ..........34

*Donald v Pruitt,*
    853 F. App'x 230 (10th Cir. 2021) .........................................................23

*Dyson v. District of Columbia,*
    710 F.3d 415 (D.C. Cir. 2013) ...............................................................16

*FedEx Home Delivery v. NLRB,*
    849 F.3d 1123 (D.C. Cir. 2017) .............................................................17

*Fedora v. Merit Sys. Prot. Bd.,*
    848 F.3d 1013 (Fed. Cir. 2017) ..............................................................31

*Founding Church of Scientology of Washington, D.C., Inc. v. Webster,*
    802 F.2d 1448 (D.C. Cir. 1986) .............................................................18

*Gladden v. Bolden,*
    No. 11-5279, 2012 WL 1449249 (D.C. Cir. Apr. 12, 2012) ..................19

*Gustafson v. Alloyd Co.,*
    513 U.S. 561 (1995) ...............................................................................34

*Herron v. Fannie Mae,*
    861 F.3d 160 (D.C. Cir. 2017) ........................................................ 15, 29

*Irwin v. Dep't of Veteran's Affairs,*
    498 U.S. 89 (1990) ...................................................................... 16, 25, 33

*Jackson v. Modly*,
    949 F.3d 763 (D.C. Cir. 2020) ................................................................. 31, 32

*Jordan v. Dep't of Army*,
    Civ. A. No. 19-0349, 2019 WL 5566523 (E.D. Va. Oct. 28, 2019)....................31

*King v. Dole*,
    782 F.2d 274 (D.C. Cir. 1986) ........................... 1, 3, 4, 5, 7, 8, 9, 14, 29, 30

*Lindahl v. Office of Personnel Management*,
    470 U.S. 768 (1985) .................................................................................. 13, 30

*Lovitky v. Trump*,
    949 F.3d 753 (D.C. Cir. 2020) ........................................................................29

*Martin v. Ford Motor Co.*,
    No. 21-6089, 2022 WL 17076782 (6th Cir. Aug. 23, 2022) .............................23

*Menominee Indian Tribe of Wis. v. United States*,
    764 F.3d 51 (D.C. Cir. 2014) ..........................................................................16

*Mondy v. Sec'y of Army*,
    845 F.2d 1051 (D.C. Cir. 1988) ......................................................................18

*Montoya v Chao*,
    296 F.3d 952 (10th Cir 2002) ................................................................... 34, 35

*Morris Commc'ns, Inc. v. FCC*,
    566 F.3d 184 (D.C. Cir. 2009) ........................................................................20

*Morrissey v. Mayorkas*,
    17 F.4th 1150 (D.C. Cir. 2021) .......................................................................25

*Norman v. United States*,
    467 F.3d 773 (D.C. Cir. 2006) ........................................................................14

*Nunnally v. MacCausland*,
    996 F.2d 1 (1st Cir. 1993) ...............................................................................34

*Off. of Pers. Mgmt. v. Richmond*,
    469 U.S. 414 (1990) ........................................................................................20

*Oja v Dep't of Army*,
    405 F.3d 1349 (Fed. Cir. 2005) ................................................................. 30, 31

*Oklahoma v. Castro-Huerta*,
    142 S. Ct. 2486 (2022) ....................................................................................33

*Pace v. DiGuglielmo*,
    544 U.S. 408, 125 S. Ct. 1807 , 161 L.Ed.2d 669 (2005)................................15

*Paige v. United States*,
    171 F.3d 559 (8th Cir.1999) ...........................................................................22

*Pena-Gonzales v. State*,
    No. 21-3174, 2022 WL 214747 (10th Cir. Jan. 25, 2022)................................23

*Richards v. Mileski*,
    662 F.2d 65 (D.C. Cir. 1981) ..........................................................................16

*Rodriguez v. Chertoff*,
    216 F. App'x 1 (D.C. Cir. 2006) ..........................................................19
*Smith v. Davis*,
    953 F.3d 582 (9th Cir. 2020) ...............................................................24
*Smith-Haynie v. District of Columbia*,
    155 F.3d 575 (D.C. Cir. 1998) ...................................................... 25, 26
*Strickland v. Crow*,
    No. 21-6085, 2022 WL 245521 (10th Cir. Jan. 27, 2022).................23
*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
    116 S. Ct. 1529 (1996) .........................................................................33
*United States v. Cicero*,
    214 F.3d 199 (D.C. Cir. 2000) .............................................................16
*United States v. Kwai Fun Wong*,
    575 U.S. 402 (2015) ....................................................................... 31, 33
*United States v. Saro*,
    252 F.3d 449 (D.C. Cir. 2001) .............................................................15
*United States v. Tinsman*,
    No. 21-7024, 2022 WL 3208346 (10th Cir. Aug. 9, 2022) ...............23
* *Young v. Secs. & Exch. Comm'n*,
    956 F.3d 650 (D.C. Cir. 2020) ............................. 10, 15, 16, 23, 26, 27

## Federal Statutes

5 U.S.C. § 7703 ..................................................................................... ix
5 U.S.C. § 7703(b)(1) ...................................................................... 13, 31
5 U.S.C. § 7703(b)(2) ...................................... 1, 3, 10, 13, 18, 29, 33
28 U.S.C. § 1291 ......................................................................................1
28 U.S.C. § 2401(a) ...............................................................................31
28 U.S.C. § 2401(b) ...............................................................................32
29 U.S.C. § 216(b) ................................................................................. ix
29 U.S.C. § 633a(c) ............................................................................... ix
42 U.S.C. 2000e-16(c) ...................................................................... ix, 31

# GLOSSARY

JA___                                              Joint Appendix page citation

Board                                         Merit Systems Protection Board

R._                              Docket Entry in the District Court proceeding

Inspector General   Office of Inspector General for the Dep't of Homeland Security

Robinson                                            Appellant Adam Robinson

# RELEVANT STATUTE

5 U.S.C. § 7703, Judicial review of decisions of the Merit Systems Protection Board

\*   \*   \*

(b)

 (1)

  (A) Except as provided in subparagraph (B) and paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. Notwithstanding any other provision of law, any petition for review shall be filed within 60 days after the Board issues notice of the final order or decision of the Board.

  (B) A petition to review a final order or final decision of the Board that raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D) shall be filed in the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. Notwithstanding any other provision of law, any petition for review shall be filed within 60 days after the Board issues notice of the final order or decision of the Board.

 (2) Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)), as applicable. Notwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under such section 7702.

## STATEMENT OF JURISDICTION

The District Court found that it lacked jurisdiction over this suit pursuant to 5 U.S.C. § 7703(b)(2) because the complaint was received by the Clerk for filing one day after than the 30-day deadline allowed by that statute.  The District Court also found in the alternative, assuming that 5 U.S.C. § 7703(b)(2) did not deprive it of jurisdiction, that it would decline to exercise its discretion to excuse Robinson's late filing of the complaint through equitable tolling.

This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Assuming the statutory provision setting a 30-day limit for filing an appeal of a final order of the Merit Systems Protection Board in a mixed case appeal is subject to equitable tolling, whether Robinson failed to carry his burden of showing a legitimate basis for equitably tolling the period, and what standard applies to review of this issue.

2.    Alternatively, if this Court concludes Robinson adequately demonstrated a sufficient basis for equitable tolling, whether the Court should continue to disallow equitable tolling of the deadline in 5 U.S.C. § 7703(b)(2), consistent with *King v. Dole*, 782 F.2d 274 (D.C. Cir. 1986), or overrule that holding through an *Irons* footnote.

-1-

## STATEMENT OF THE CASE

Appellant Adam Robinson brought this action in District Court in June 2020, challenging the May 20, 2020, final decision of the Merit Systems Protection Board, which upheld his removal in 2019 from a Program Analyst position at the Office of Inspector General for the Department of Homeland Security.  Robinson had argued to the Board that he did not deserve to lose his job and that the Inspector General had discriminated against him based on his race and sex in violation of Title VII of the 1964 Civil Rights Act.  *See* R.1 (complaint); JA2.  Robinson filed the action *pro se*, and the District Court denied without prejudice his motion to appoint counsel to represent him on March 12, 2021.  JA2.

In response to the complaint, the Inspector General moved to dismiss or, in the alternative, for summary judgment.  R.12.  The District Court advised Robinson about the burden and importance of responding to the motion (R.15), and granted him both additional response time as well as leave to file any appropriate materials. *See* JA3-4, April 9, 2021 & April 23, 2021 Minute Orders.  Instead of responding to the initial defense motion, Robinson moved for leave to amend the complaint (R.18), and the District Court promptly granted such leave.  *See* JA4, May 7, 2021 Minute Order; JA7-14 (Am. Compl.).  Three weeks later, an attorney entered his appearance on behalf of Robinson (R.19), but did not seek any further leave to modify the operative complaint.

On May 28, 2021, the Court entered a Minute Order advising the parties and memorializing that the Clerk had received the original complaint on June 20, 2020. JA4.  Subsequently, the Inspector General moved to dismiss the amended complaint or, in the alternative for summary judgment (R.24, 25).  Now represented by counsel, Robinson opposed the defense motion (R.27, 28), and the Inspector General filed a reply (R.29).  Before the District Court ruled and without seeking leave, Robinson filed a purported "Errata" to his opposition to which the Inspector General objected (R.32) as more than a mere correction and improperly raising new arguments and evidence, including a second declaration from Robinson outside the established briefing schedule without opportunity for a defense response.

On March 10, 2022, the District Court granted the Inspector General's motion to dismiss based on its review of the entire record. JA77-84.  The District Court found that Robinson had initiated the action one day outside the 30-day period provided in 5 U.S.C. § 7703(b)(2), and that the limitations period is jurisdictional pursuant to *King v. Dole*, 782 F.2d 274 (D.C. Cir. 1986).  *See* JA80-82. Alternatively, even assuming the statute set a non-jurisdictional time limit, the District Court also found that Robinson had failed to show adequate grounds for equitably tolling the period because Robinson's assertion that he had called the Clerk on June 15, 2020, and been told that deadlines were not being strictly enforced due

to the pandemic did not alter Robinson's mailing of the complaint the same day, which failed to result in timely receipt by the Clerk. *See* JA82-83.

This appeal followed.

## STATEMENT OF FACTS

### A. Robinson's Employment by the Inspector General and Administrative Challenges to Its Decision to Terminate His Employment

For purposes of this appeal, nearly all details concerning Robinson's employment are irrelevant because the case was dismissed at the outset without consideration of the merits. Briefly by way of background, Robinson began employment as a Program Analyst with the Inspector General in June 2016, and his supervisors became sufficiently dissatisfied with his performance to propose his removal in August 2018. *See* JA8. Along the way Robinson accused them of unlawfully discriminating against him based on his race and gender both prior to and in connection with their decision to terminate his employment in February 2019. *See generally* JA7-14 (Am. Compl.). Robinson also claimed that the Inspector General's decision to end his employment after an opportunity to improve his performance was motivated by Robinson's accusations of discrimination under Title VII of the 1964 Civil Rights Act. *Id*.

Before the Merit Systems Protection Board, Robinson exhausted those Title VII claims and challenged the sufficiency of the Inspector General's evidence and reasons for discharging him. In the nomenclature of the Civil Service Reform Act,

-4-

this is known as a "mixed case" because it combines discrimination and merits-based claims or defenses.  On April 20, 2020, after conducting a two-day hearing during which Robinson did not testify (JA36) and the Inspector General presented multiple witnesses and evidence, an Administrative Judge issued a preliminary decision finding in favor of the Inspector General and against Robinson on all claims. JA15-57.

More specifically, the Board's Administrative Judge examined the details of the duties assigned to Robinson, the concerns with the quantity and quality of some of Robinson's work as expressed and contemporaneously documented by his supervisors, and Robinson's responses to those expectations.  *See* JA16-23.  Based on the record, the Board's Administrative Judge found substantial evidence that the Inspector General had communicated to Robinson valid performance standards and critical elements of his position and decided to terminate his employment only after affording him a chance to improve his performance.  *See id*.; JA23-40.  The Board's Administrative Judge also found that Robinson failed to show he had been the victim of any unlawful discrimination or retaliation under either Title VII or for being an alleged whistleblower.  *See* JA40-44.  Finally, the Administrative Judge also found the evidence did not support Robinson's allegation of the prohibited personnel practice of granting an unauthorized advantage or practice or any harmful procedural error in the removal proceedings.  *See* JA 44-50.

The Administrative Judge's April 15, 2020, initial decision informed the parties of various routes of further administrative Board proceedings or judicial review. JA50-57; *see* JA15. When neither Robinson nor the Inspector General filed a request for further Board review within the time allowed, the initial decision automatically ripened into a final Board decision on May 20, 2020. As noted in the Board decision, that started a 60-day period for Robinson to seek review in the Federal Circuit (but only if he dropped the Title VII claims) and a 30-day period for him to seek review (of all claims) in the district court. JA54-57. Robinson chose the latter route.

## B. <u>District Court Proceedings</u>

Robinson, who resides in the Maryland suburbs of the District of Columbia (JA7), mailed the original complaint and a check made payable to the Clerk of the District Court on June 15, 2020. Robinson had spoken with unidentified staff in the Clerk's office earlier that same day. *See* JA59. Without describing the entire conversation, Robinson stated that he called and "was informed that filing deadlines were not being strictly enforced due to the Covid-19 pandemic, and that as a result it was more important to just file rather than to worry about meeting a strict deadline." *Id.*[1]

---

[1]    The District Court's Standing Order 20-9, entered on March 17, 2020, described the "Court Operations in Exigent Circumstances Created by the

As noted above, the District Court granted Robinson leave for an amended complaint in May 2021. JA4, May 7, 2021, Min. Order; R.20. Next, an attorney entered an appearance for the first time on behalf of Robinson (R.19), and then on May 28, 2021, the District Court corrected an "administrative error" in its record concerning the date the complaint was filed to reflect a "corrected date for purposes of further proceedings in this case" as June 20, 2020. JA4, May 28, 2021, Min. Order.

The Inspector General moved to dismiss or, alternatively, for summary judgment on all claims in the amended complaint. R.24 (public); R.25 (sealed). Robinson opposed on the deadline set by the District Court (R.27) and filed a further response nine days later without requesting either leave or additional time (R.28). The Inspector General timely filed a reply (R.29) on October 14, 2021. On November 4, 2021, Robinson filed a notice stating that his counsel had filed his timely opposition in error and asking for the untimely opposition already filed to be substituted. *See* JA5. Six days later, Robinson filed what he titled an "Errata" (R.30)

---

COVID-19 Pandemic." Standing Order 20-9 stated that the District Court remained "OPEN with LIMITED OPERATIONS to support essential functions in criminal, civil, and bankruptcy matters[.]" *Id.* ¶ 1. Standing Order 20-9 further stated that "self-represented litigants may date-stamp and deposit papers in drop boxes available at the entrance to the courthouse." *Id.* ¶ 8. In the preceding paragraph, Standing Order 20-9 stated that "This Order does not toll any applicable statute of limitations." *Id.* ¶ 7.

containing a new Statement of Facts, supplemental opposition argument, and a second declaration from Robinson.  On February 18, 2022, the Inspector General filed a "Notice of Objections to Plaintiff's Improper Submissions," contending that Robinson's tactics had unfairly deprived the Inspector General of the opportunity to respond to the opposition to its motion.  R.32; *see* Local Civ. R. 7.

**C.**     **The District Court's Decision**

On March 10, 2022, the District Court granted the Inspector General's motion to dismiss for lack of subject matter jurisdiction.  JA76.  In an accompanying Memorandum Opinion, the District Court found that Robinson had filed the complaint on June 20, 2020, which all parties agree was one day after the deadline.  JA80.  Noting that Robinson did not contest the jurisdictional nature of this deadline (*id*.), which the Inspector General had argued under this Court's decision in *King*, 782 F.2d at 274, the District Court rejected Robinson's assertion that the complaint was received by the Clerk on June 17, 2020, which was two days after Robinson says he deposited the complaint into the mail and two days before the statutory deadline.  *See* JA81.  The District Court evaluated the evidence Robinson had submitted concerning his mailing of the complaint, but ultimately found that the lack of any "tracking information [for the package containing the complaint and check for the filing fee], a delivery receipt, a date stamp, or any other record or attestation [of delivery as opposed to sending]" failed to show a date of filing earlier than the

one indicated on the docket by the Clerk.  *Id*.  Because "[mailing obviously is not the same as delivery or receipt[,]" (*id*.), and the Federal Rules of Civil Procedure provide that civil actions are commenced on the date the Clerk receives the complaint, the District Court found that the case was untimely filed and had to be dismissed because the deadline was jurisdictional under *King*.  *See id*.  As to the Inspector General's objection to the manner of briefing, the District Court noted that it considered Robinson's belatedly proffered second declaration and that doing so was not outcome determinative.  *See* JA81–82 (n.3).

The District Court went on to rule that "[e]ven if the Court were free to disregard *King*, Robinson would still not clear the high bar for equitable tolling." JA82.  Robinson's "Errata" only passingly referred to the record only as showing "excusable neglect," (R.30 at 5), and did not request equitable tolling.  *See* R.30 at 5.  But the District Court generously construed references to the pandemic and the "Court's reduced operations and mail processing" as requesting equitable tolling of the statutory deadline.  The District Court considered Robinson's evidence concerning a statement by a person in the Clerk's office about "filing deadlines [] not being strictly enforced" during the pandemic and the entire record, and found that Robinson could not rely on the statement as an excuse for his actions because the call was on the same day as Robinson's own last act, mailing the complaint. JA83.  Ultimately, the District Court reasoned that Robinson's chosen method of

delivery to the Clerk by mail had "assumed the risk that the pleading would not arrive on time" and that the Court "would find no basis for enlarging the deadlines even were equitable tolling available."   JA83; *see also* JA82 (describing the standards for equitable tolling).

Thus, the District Court dismissed the case based on when it was filed and did not consider the merits of any claim or defense or the voluminous exhibits relating to the Board proceedings.

## SUMMARY OF ARGUMENT

There is no need to consider the more complicated issue of *King*'s ongoing vitality unless the record reflects an appropriate basis for equitably tolling the 30-day limit in 5 U.S.C. § 7703(b)(2).   It does not.   Equitable tolling is for "extraordinary and carefully circumscribed instances" when a diligent plaintiff shows "that some extraordinary circumstance stood in his way." *Young v. Secs. & Exch. Comm'n*, 956 F.3d 650, 655 (D.C. Cir. 2020).  Although the Inspector General would not contest either that Robinson was generally diligent in pursuing his rights or that the COVID-19 pandemic was "extraordinary" in many ways, Robinson failed (even with an extra opportunity while represented by counsel) to make a sufficient argument or showing of how COVID-19 or responses to it by schools, stores, health officials, or governments impaired his ability to file this action within the statutory deadline.   Far from establishing that COVID-19 created an obstacle to his timely

filing the complaint, the record shows little more than a mailing date on June 15, 2020, and a receipt by the Clerk on June 20, 2020, one day late.

Mailing a complaint to the Clerk within a few days of the deadline instead of delivering it or having it delivered to the open courthouse to assure timely receipt, on this record, fails to establish an adequate basis for equitable tolling under precedents of this Court and the Supreme Court. Considering the district court's contemporaneous Standing Order specifying that civil cases could still be initiated by delivery of complaints and that statutes of limitation would not be tolled, no reasonable person would believe that a general statement Robinson attributes to the Clerk's staff would supersede that order. As recounted by Robinson, the Clerk's guidance was that it was "most important to file," and it neither provided a reason for Robinson to slow down nor does he claim that it caused him to change course.

To countenance Robinson's thin excuses would unacceptably lower the bar for equitable tolling to mere identification of an extraordinary event and remove the required showing of some causation between the extraordinary event and the missed deadline. Even so, Robinson's reliance on the statement is unavailing because Robinson had not filed the complaint before hearing the Clerk's statement and failed to explain how, if at all, the statement altered his behavior. To the extent he is essentially contending the statement lulled him into slowing down, it did not because he mailed it the same day. Robinson never intimated in either of his declarations

-11-

that the statement caused him to refrain from delivering the complaint to the courthouse either personally or through a delivery service, and he explicitly makes no such argument on appeal.  His counsel's indirect supposition or speculation in Appellant's opening brief may not substitute for the showing required below.

Further, because he failed to proffer evidence creating any factual dispute concerning the Clerk's receipt of the complaint on June 20, 2020, and failed to raise in his opening brief his argument below that the Clerk received the complaint on or before June 19, 2020, the Court should affirm on the basis that equitable tolling does not apply.  Robinson's arguments for a plausibility standard for equitable tolling (Br. at 16) are contrary to law.  Other courts outside of the District of Columbia have refused to excuse lateness based on similar incantations of COVID-19, and this Court should reach the same result here.

The Court need not decide *King*'s continuing viability if it agrees with the District Court that equitable tolling does not apply here.  That said, if the Court finds Robinson has sufficiently demonstrated an entitlement to equitable tolling here, it should not overrule *King* using an *Irons* footnote.  Whether the period in section 7703(b)(2) is jurisdictional and not subject to equitable tolling is more complicated than Appellant portrays, and indeed the Court has already denied an *en banc* petition in this case.  *King* is not so clearly a precedent which, due to an intervening Supreme Court decision, or the combined weight of authority from other circuits, a panel

should be convinced is an incorrect statement of current law. Indeed, *King* is fully consistent with the Supreme Court's conclusion in *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 793 (1985), finding that the parallel sub-paragraph of Section 7703(b)(1) is jurisdictional.

*King* has not been plainly overruled by subsequent developments. The continuing viability of *King* is also buttressed by the Federal Circuit's holdings. The Federal Circuit has continued to find the companion sub-paragraph found at 5 U.S.C. § 7703(b)(1)—which uses the same language as Section 7703(b)(2) to establish the deadline for cases proceeding to that court from the Board—is jurisdictional and not subject to equitable tolling. Abrogating the holding in *King* would create inter-Circuit tension on this front, and this tension, if not avoided entirely, should at a minimum not be undertaken in an expedited fashion.

## ARGUMENT

This Court need not re-examine whether 5 U.S.C. § 7703(b)(2)'s time limit for filing civil actions in mixed cases is jurisdictional, because even assuming it is not, Robinson failed to show an entitlement to equitable tolling. *See Coal River Energy, LLC v. Jewell*, 751 F.3d 659, 663 (D.C. Cir. 2014) (declining to decide whether a statute of limitations is jurisdictional because the appellant failed to establish entitlement to equitable tolling); *see also Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) (same). Robinson vaguely claimed below that

the COVID-19 pandemic was extraordinary without describing how it impacted his actions or their timing, and his implicit assertion that a District Court Clerk's assurance four days before the deadline that filing deadlines were not being strictly enforced falls short of the demanding standard for equitable tolling.

But even were the Court to reverse the District Court's finding that Robinson is not entitled to equitable tolling, then the panel should still affirm by applying *King* and decline Robinson's suggestion of overruling using an *Irons* footnote because this case does not meet the criteria in the Court's Policy Statement on En Banc Endorsement of Panel Decisions (Jan. 17, 1996).   Robinson's arguments for expedited overruling of *King*, 782 F.2d at 274, through an *Irons* footnote are unpersuasive.  Although perhaps producing what can appear to be a harsh result in this case, following *King* is appropriate under *stare decisis* and avoids tension with other decisions of this Court and the Federal Circuit.

A.    <u>**Robinson Is Not Entitled To Equitable Tolling.**</u>

In this matter, the Clerk clarified the record during the litigation by amending the date of filing from July 20, 2020, to the corrected date of June 20, 2020.  *See* JA2; JA4, May 28, 2021, Min. Order.[2]  By failing to raise it in his opening brief,

---

[2]    The District Court's Memorandum Opinion (JA80) contains a scrivener's error where it identifies July 24, 2020 as the date being clarified by the Clerk, and the difference is of no moment.

Robinson has abandoned on appeal any argument that the Clerk received the initial complaint earlier than June 20, 2020. This forfeits the issue. *Herron v. Fannie Mae*, 861 F.3d 160, 165 (D.C. Cir. 2017).

### 1. Applicable Legal Standards for Equitable Tolling and Appellate Review

Robinson's assertion that he need only show a "plausible" basis for equitable tolling is incorrect. *See* Appellant's Br. at 16. The cases he cites describe the necessary plausibility of claims for relief in a pleading when challenged by a motion to dismiss for failure to state a claim, but those cases are inapposite to his assertion of equitable tolling. Additionally, the District Court clearly relied on matters outside of the pleadings. JA81-83. On the other hand, Robinson's acknowledgement of needing to "clear a high bar" to qualify for equitable tolling (Appellant's Br. at 16) is correct. This Court recently described that "high bar" in *Young v. SEC*, 956 F.3d 650, 655 (D.C. Cir. 2020):

> The party arguing for equitable tolling bears the burden of demonstrating entitlement to it. *United States v. Saro*, 252 F.3d 449, 454 (D.C. Cir. 2001). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807 , 161 L.Ed.2d 669 (2005) (citations omitted). "To count as sufficiently 'extraordinary' to support equitable tolling, the circumstances that caused a litigant's delay must have been beyond its control." *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014), *aff'd*, ⸺ U.S. ⸺, 136 S. Ct. 750, 193 L.Ed.2d 652 (2016). Relevant here, "[t]he circumstance that stood in a

-15-

litigant's way cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation." *Id.*

*Id.* Equitable tolling does "not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veteran's Affairs*, 498 U.S. 89, 96 (1990). This means that equitable tolling requires more than a "garden variety claim of excusable neglect."[3]

Because assertions of equitable tolling involve factual determinations, the standard of appellate review should be for abuse of the district court's discretion. This Court has not squarely addressed the standard for review of a finding that equitable tolling does not apply. *See Menominee Indian Tribe*, 764 F.3d at 58 (noting the parties' disagreement and the absence of a need to resolve it because the Court agreed that equitable tolling was unwarranted); *see also Dyson v. District of Columbia*, 710 F.3d 415, 420 (D.C. Cir. 2013) (applying *de novo* review to the merits of an equitable tolling claim without deciding the standard of review issue).[4] Review

---

[3]    Neither Robinson's apparent lack of legal representation when he filed the original complaint nor any unfamiliarity with the procedures for filing a complaint in district court supply any appropriate basis for equitable tolling. *See Young*, 956 F.3d at 655 (citing *United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000), and *Richards v. Mileski*, 662 F.2d 65, 71 n.10 (D.C. Cir. 1981)). Robinson is fairly charged with knowledge of Standing Order 20-9, which was available on the District Court's website.

[4]    To the extent the Court concludes that *Dyson* established a de novo standard of review and that the issue is not undecided as indicated in the later case of *Menominee Indian Tribe*, this Court should review the matter de novo. *See FedEx*

should be for abuse of discretion because rejecting equitable tolling neither turns on an interpretation of statutory language nor is there a question of whether the district court applied an incorrect legal standard.  To the contrary, the district court applied established law to the record, and the parties' dispute on the issue of tolling focuses on whether the court did so correctly.

Thus, this is a classic circumstance in which appropriate deference is due to the district court's factual determination.  Assessing whether a plaintiff has demonstrated equitable tolling is a determination that the district court is particularly well positioned to make, and this Court should not "reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently," unless the district court's finding is not "plausible in light of the record viewed in its entirety." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) ("The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise.") (interpreting clear error standard).  This Court should not substitute its judgment of what is reasonable for that of the district court, but rather should review the lower court's judgment only to ensure that it is not founded upon an error of law, which would be an abuse of discretion, or a clearly erroneous

---

*Home Delivery v. NLRB*, 849 F.3d 1123, 1127 n.3 (D.C. Cir. 2017) ("'[W]hen a conflict exists within our own precedent,' . . . a subsequent panel is 'bound by the earlier' of the two conflicting decisions." (citations omitted)).

finding of fact. *See Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F.2d 1448, 1457 (D.C. Cir. 1986) ("The abuse-of-discretion standard calls on the appellate department, in a spirit of humility occasioned by not having participated in what has gone before, not just to scrutinize the conclusion but to examine with care and respect the process that led up to it.").

### 2. The District Court Correctly Found the Record in This Case Does Not Support Equitable Tolling.

This Court has made clear that "[t]he court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). The record in this case does not present one of those situations.

As relevant here, courts apply equitable tolling where a *pro se* claimant makes "diligent but technically defective efforts to act within a limitations period," or where the claimant was "misled about the running of a limitations period," *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997) (citing *Irwin*, 498 U.S. at 95–96). Robinson does not claim to have been misled about the running of the limitations period or when it was ending. It is undisputed that the 30-day limitations period under 5 U.S.C. § 7703(b)(2) was triggered on May 20, 2020, when the April 20, 2020, decision from the Merit Systems Protection Board automatically ripened into the final decision of the Board. Appellant's Br. at 5 ("Robinson had until June 19, 2020 to sue in district court."). The record shows that Robinson

-18-

contemporaneously understood that the deadline for filing in the district court was June 19, 2020 (JA70, Robinson Decl. ¶ 49).

As to his efforts to act during the limitations period, the record shows that on June 15, 2020, Robinson mailed the complaint along with a check (apparently dated two days in the future) to the Clerk.  JA58-59.[5]  Robinson's second and substantially longer declaration[6] (submitted when he had the benefit of legal representation) recounts a portion of a conversation Robinson had on June 15, 2020 with an unidentified staff member in the District Court Clerk's office whom he asked about mail processing during the pandemic and who he claims told him "filing deadlines

---

[5]     Robinson does not dispute that a federal court complaint is not deemed "filed" until the Clerk's Office receives it.  *See also Rodriguez v. Chertoff*, 216 F. App'x 1, 1 (D.C. Cir. 2006) (a "complaint [i]s deemed filed on the date it was first received by the clerk"); *Gladden v. Bolden*, No. 11-5279, 2012 WL 1449249 (D.C. Cir. Apr. 12, 2012) (granting summary affirmance of dismissal for untimeliness where district court held that "the date of the filing is established by the official docket").  The Clerk's Office initially mis-docketed the Complaint as having been filed on July 20, 2020, and on May 28, 2021, the District Court entered a Minute Order stating as follows: "The Clerk's Office has informed the Court that the . . . Complaint was filed on June 20, 2020, and that the [July 20, 2020] date reflected on the docket is the result of an administrative error.  The Court therefore instructs the Clerk's Office to update the docket to reflect the Complaint's correct filing date, and the parties shall be advised of that corrected date for purposes of further proceedings in this case."  JA4.

[6]     Robinson's first declaration (JA59), dated April 22, 2021, is sworn but not under penalty of perjury.  For purposes of this appeal, this evidentiary deficiency is insignificant.

during this period were not being strictly enforced due to the pandemic[.]" JA70; *see* JA59 (referencing phone records placing the call at 10:13 a.m.).

Robinson's argument about the reasonableness of his reliance on the Clerk's statement conflates equitable tolling with the doctrine of equitable estoppel, which is different and unavailable in this case. To invoke estoppel, a claimant must show (1) the party asserting a limitations defense made a "definite representation" to the claimant; (2) the claimant "relied on its adversary's conduct in such a manner as to change [her] position for the worse"; and (3) the claimant's "reliance was reasonable." *Morris Commc'ns, Inc. v. FCC*, 566 F.3d 184, 191 (D.C. Cir. 2009). But the Clerk is unaffiliated with the Inspector General (the party raising the limitations defense) and, in any event, "equitable estoppel will not lie against the Government as it lies against private litigants." *Off. of Pers. Mgmt. v. Richmond*, 469 U.S. 414, 419 (1990) (leaving unresolved whether estoppel ever applies against federal agencies). Robinson's argument imports the reasonable reliance element of equitable estoppel to attempt to show that his efforts were technically deficient under an equitable tolling analysis, but this should be rejected.

Robinson may not use the Clerk's statement to establish whatever technical deficiency in his efforts he may be arguing support an equitable tolling claim. To the extent Robinson's argument suggests that the Clerk's statement influenced his state of mind and lulled him into delay, that notion is disproven by his own actions

because he mailed the complaint the same day he spoke to the Clerk's office (June 15). JA59. What matters for purposes of equitable tolling[7] is why Robinson did not mail the complaint sooner or deliver it no later than June 19, not whether it was reasonable for Robinson to expect mail delivery within three or four days.[8]

What does matter is what is lacking from Robinson's proffered explanations. Robinson did not cite the pandemic or response to it as the reason he chose the mail over personal delivery of the complaint, and he says nothing in his declarations or elsewhere about how, if at all, his daily life in general or his ability to attend to his legal affairs was impacted by COVID-19, or the response to it by local, state, and federal governments. *See* Appellant's Br. at 17 (citing cases finding "logistical hurdles" but no evidence). Indeed, Robinson failed to identify or describe a single obstacle preventing him from compliance with section 7703(b)(1)'s 30-day limit. He fails to explain why he could not have mailed the complaint to the Clerk sooner or otherwise taken steps to deliver the complaint to the courthouse, personally or

---

[7]     *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 152 (1984) ("Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.").

[8]     Robinson fails to indicate the time of day or where he deposited the complaint with the United States Postal Service. JA70. Because he has the burden, viewing the evidence in the light favorable to Robinson is unwarranted.

through an agent, anytime on June 15, June 16, June 17, June 18, or June 19.  Indeed, the record says very little about Robinson's efforts to ensure that the District Court received the complaint on or before June 19, 2020.

Deposit of the complaint into the mail on June 15 does satisfy the deadline requiring delivery contained in the plain language of section 7703(b)(2), and Robinson does not contend otherwise on appeal.[9]  In June 2020, COVID-19 was an "extraordinary circumstance" but not one shown to have caused untimeliness in this matter, and the District Court's modification of the number of staff on site each day had no bearing on when the Clerk received mail.  Nothing in the record indicates any unavailability in the deposit boxes at the entrance to the courthouse as reflected in Standing Order 20-9.

Robinson's vague attempts to blame forces outside himself is a ploy to misdirect attention from the proper inquiry of what, if anything, prevented Robinson either from placing the complaint in the mail sooner than June 15 or arranging for the delivery of the complaint to the courthouse by other available means on or before June 19.  These gaps in the record may not be filled with appellate counsel's

---

[9]    Entrusting delivery to the Postal Service on an uncertain timeline and with the attendant chance of mis-delivery or loss, is a risk that does not warrant equitable tolling.  *See*, *e.g.*, *Paige v. United States*, 171 F.3d 559, 561 (8th Cir. 1999) (equitable tolling unavailable to prisoner whose petition, prepared by an inmate in a different prison, was delayed in mail).

speculative implication that unidentified "extraordinary circumstances created by COVID-19" caused a delay beyond Robinson's control.   There is virtually no evidentiary showing that COVID led to the untimely receipt by the Clerk of the complaint.  The internet, computers, printers, cars, and public transportation all still worked, and, as a result, it would seem Robinson had every means necessary to timely deliver his complaint or arrange for it during the week of June 15-19, 2020.  As such, this merely colorable evidence falls under the misunderstanding or tactical mistakes that Robinson may regret but which do not warrant tolling.  *Young*, 956 F.3d  at 655.  And other courts have rebuffed comparably vague resort to COVID-19 as grounds for equitable tolling.  *E.g.*, *Donald v Pruitt*, 853 F. App'x 230 (10th Cir. 2021) (rejecting equitable tolling based on COVID-19); *Martin v. Ford Motor Co.*, No. 21-6089, 2022 WL 17076782, *2 (6th Cir. Aug. 23, 2022) (same).[10]

This Court has rejected similar claims of statements by the Clerk failing to defray confusion, *Young*, 956 F.3d at 657, and the same result is appropriate here.  That only one day's tolling is needed is irrelevant to the analysis.  The record does

---

[10]     *United States v. Tinsman*, No. 21-7024, 2022 WL 3208346, at *3 (10th Cir. Aug. 9, 2022) (declining to grant a certificate of appealability due to equitable tolling based on the COVID-19 pandemic); *see also Pena-Gonzales v. State*, No. 21-3174, 2022 WL 214747, at *1 (10th Cir. Jan. 25, 2022); *see also Strickland v. Crow*, No. 21-6085, 2022 WL 245521, at *4 (10th Cir. Jan. 27, 2022) (denying petitioner's request for equitable tolling (and thus for a COA) even though his access to the law library was limited due to COVID-19 restrictions because "he ha[d] not shown how his limited access 'caused his delay in filing'").

not support finding any extraordinary circumstance beyond Robinson's control that stood in his way or caused him to decide to deposit his complaint into the mail instead of delivering the complaint by hand to the boxes at the courthouse entrance set up for the Clerk's office. *Smith v. Davis*, 953 F.3d 582, 600 (9th Cir. 2020) (en banc) ("it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy").

Moreover, although Robinson's second declaration focuses on the portion of the Clerk's statement about deadlines not being enforced (JA70), it takes the snippet out of context, thereby distorting the meaning conveyed by the Clerk. The first declaration is the more reliable version of the Clerk's statement and Robinson's understanding of it because it was made closer in time to the events. In the first declaration, Robinson stated that "I was informed that filing deadlines were not being strictly enforced due to the Covid-19 pandemic and that as a result it was more important to just file rather than to worry about meeting a strict deadline." JA59. Reasonably prudent people would understand the Clerk's statement  that it was "more important to just file," to mean that they should file sooner rather than later, if possible. Robinson's failure to demonstrate that it was not feasible is what is missing and disentitles him to equitable tolling because his argument disregards this "most important" part of the Clerk's statement, and leaves too much to the

imagination or speculation about why he missed the deadline he knew was on June 19 when he apparently had the complaint drafted and the funds for the filing fee available no later than June 17, the day Robinson dated the check.  *See* JA58.  "As such, these circumstances amount only to a "garden variety claim of excusable neglect," *Irwin*, 498 U.S. at 96, because Robinson regrets his choice of mail but without sufficient explanation to entitle him to equitable tolling.[11]

Although Robinson has failed to argue how the extraordinary nature of the COVID-19 pandemic is relevant, if his argument is that the fear of contracting the virus was upsetting then that should likewise fail.  Assertions of extreme personal upset as a cause for missed deadlines have been rejected as legitimate grounds for equitable tolling.  For example, in *Smith-Haynie v. District of Columbia*, 155 F.3d 575 (D.C. Cir. 1998), the Court evaluated an assertion that a plaintiff who missed an expiring limitations period was *non compos mentis*.  *Id.* at 579-80.  That phrase connotes an inability to attend to one's affairs, and the plaintiff in *Smith-Haynie* described feeling confused by the administrative decision and retraumatized by its discussion of the underlying discrimination claims.  *See id*. at 580.  The Court

---

[11]     *Cf. Morrissey v. Mayorkas*, 17 F.4th 1150, 1157–58 1162 (D.C. Cir. 2021) (applying Rule 4(m)'s provision that district courts "must dismiss" when timely service of the summons and complaint is made at the outset of civil cases unless a mandatory extension applies and dismissing a pair of cases where counsel made errors or failed to correct identified deficiencies).

accepted that Smith-Haynie was emotionally upset but ultimately found that gaps in the record about what happened on the days leading up to the expiration of the limitations period prevented concluding that equitable tolling was appropriate because the record "d[id] not yield a reasonable inference that she was incapable of handling her own affairs and functioning in society." *See id.*[12]

The record in this case presents significantly larger gaps than *Smith-Haynie*. As a result, it would be even less reasonable to apply equitable tolling here. *Brookens v. Acosta*, 297 F. Supp. 3d 40, 43–44 (D.D.C. 2018), *summarily aff'd*, No. 18-5129, 2018 WL 5118489 at *1 (D.C. Cir. Sept. 19, 2018) (affirming because, even assuming the deadline in section 7703(b)(2) was not jurisdictional, no basis was shown for extending the time to file). Although Appellant's Brief does not connect these dots, the most that can be said of the evidence in the record is that the Clerk's statement convinced Robinson that he could mail the pleading and risk it being a day or two (or more) late without consequence. But that is no different than taking the ordinary risk that the mail would be lost, and in any event, it would have been objectively unreasonable for Robison to have relied on the Clerk's statement

---

[12]    The opinion in *Smith-Haynie* references a presumption the Supreme Court employed in a Title VII case decided in 1984 that mail was received within three days. *See Smith-Haynie*, 155 F.3d at 578 n.3. But equitable tolling requires establishing two elements, *Young*, 956 F.3d at 655, and thus Robinson may not rely on any presumption to satisfy this "heavy burden." *Id.*

about deadlines when the Standing Order establishing the limited courthouse operations explicitly said it did not toll any statutes of limitations and that the courthouse was open for filing civil cases. *See Young*, 956 F.3d at 657; Standing Order 20-9.

In support of finding equitable tolling, Robinson relies on district court opinions from Nevada and Virginia and dicta in a dissenting opinion in a Supreme Court case (Appellant's Br. at 17), but these are neither binding nor persuasive. His comparison to criminal cases during the COVID-19 pandemic in 2020 is inapt because instituting a civil case was unchanged during the pandemic. Appellant's Brief (at 18) improperly fills the gaps in the evidence about Robinson's choosing mail instead of delivering the complaint with speculation. There is no basis for this speculation in the record, and even if it appears logical or based on common sense, reference to unspecified "emergency COVID-19 restrictions at Robinson's home in Montgomery County" is insufficient because the emergency travel restrictions he cites (Appellant's Br. at 17-18) all contained exceptions for necessary business (largely defined in the discretion of each person). The District Court's operations as far as instituting civil cases were largely unchanged by the pandemic: *pro se* plaintiffs remained able to drop off complaints at the courthouse for processing by the Clerk. *See* Standing Order 20-9, ¶ 8. And the district court had made clear that

its order establishing limited operations at the courthouse did not serve to toll any statute of limitations. *Id.* ¶ 7.

Finally, Robinson's overall efforts to exhaust his claims administratively (Appellant's Br. at 18), although also necessary to maintain the action, are relevant to his overall diligence but not sufficient to establish the extraordinary circumstances needed to clear the high bar for equitable tolling. Robinson fails to show any similar case where a court approved equitable tolling without some description of the plaintiff's activities and constraints and reasons for them during the limitations period. Nor has he shown a case where a *pro se* litigant's confusion caused essentially by improper reliance on the Clerk's Office for legal advice supported equitable tolling. Accordingly, Robinson's generic assertion of COVID-19 and the entire statement attributed to the Clerk as a basis for excusing his noncompliance with section 7703(b)(2)'s deadline fall beneath the high bar necessary to establish equitable tolling.

If accepted, it is difficult to see a limiting principle for the rule the Court would be adopting because the Clerk's statement, by Robinson's own account, was directed at assuaging worry about possibly missing the deadline because he had not acted sooner when he was obviously unable to change what he had left undone prior to hearing the statement on June 15, 2020, or thereafter, about which the record is silent. Especially because the Standing Order stated clearly that statutes of limitation

remained in effect, Robinson's actions, as reflected in the record, do not justify equitable tolling.

**B.    Even Were Equitable Tolling Warranted, the Court Should Not Overrule _King_ Through An _Irons_ Footnote.**

**1.    Standard of Review, Applicable Statute, and Controlling Precedent**

This Court reviews _de novo_ the District Court's dismissal of all claims[13] for lack of subject matter jurisdiction. _Lovitky v. Trump_, 949 F.3d 753, 758 (D.C. Cir. 2020). The dismissal at issue turns on the nature and application of the 30-day limit in 5 U.S.C. § 7703(b)(2) for filing an action appealing a Board's final decision in a mixed case, which the Court held was jurisdictional in _King_, 724 F.2d at 275-76. The statute provides, in relevant part, that: "Notwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under such section 7702." 5 U.S.C. § 7703(b)(2).

---

[13]    Appellant consolidated his pre-termination Title VII claims with the termination claims before the Board and does not argue any error by the District Court based on the timing of the presentment of the pre-termination Title VII claims in federal court, thus forfeiting any argument that the pre-termination Title VII claims were properly exhausted and timely filed. _Herron v. Fannie Mae_, 861 F.3d 160, 165 (D.C. Cir. 2017). In other words, because Robinson did not argue in the alternative in the District Court that the discrimination claims arising out of events prior to his termination were timely filed under Title VII, the timely exhaustion of all claims depends in this case on the provision in the Civil Service Reform Act.

### 2.     The Court Should Not Overrule *King* Using an *Irons* Footnote.

Appellant's suggestion that the Court utilize an *Irons* footnote should be rejected for multiple reasons.  First and foremost, whether section 7703(b) is a jurisdictional provision, whose terms are conditions on a court's "power to adjudicate" reviews of Board decisions is not as straightforward as Appellant suggests.

The Supreme Court has held that section 7703(b) grants jurisdiction, *Lindahl v. Off. of Personnel Mgmt.*, 470 U.S. 768, 799 (1985), and the year after the Supreme Court decided *Lindahl,* this Court in *King* held that "the clear and emphatic language" of Section 7703(b)(2) establishes a 30-day jurisdictional deadline that is a prerequisite to maintaining suit and that this deadline cannot be extended.  *King*, 782 F.2d at 275-76 (explaining that "Congress left no doubt as to the mandatory nature of the time limit").  In addition, both this Court and the Federal Circuit have reaffirmed that, even after *Irwin*, the same language in section 7703(b)(1) remains jurisdictional for review of final Board decisions without Title VII claims.  *See Benoit v. Dep't of Agric.*, 608 F.3d 17, 21 (D.C. Cir. 2010). [14]  And at least one

---

[14]     In *Oja v Department of Army*, 405 F.3d 1349 (Fed. Cir. 2005), the Federal Circuit held that equitable tolling was unavailable to extend the 60-day period under section 7703(b)(1), reasoning, in part, that:

Though the obvious relationship between Title VII and section 7703(b)(2) may very well support the equitable tolling of section

district court has continued to find section 7703(b)(2) jurisdictional upon thoughtful consideration of all or most of the arguments Robinson makes here. *See Jordan v. Dep't of Army*, Civ. A. No. 19-0349, 2019 WL 5566523, at ** 3-7 (E.D. Va. Oct. 28, 2019) (holding that 28 U.S.C. § 7703(b)(2)'s time limit is jurisdictional after analyzing *Irwin* and later decisions as well as the structure and context of the provision in the statute).

Second, if *King* is to be revisited in this case or a future one, the Court would benefit from the robust development of full briefs on the issues and exchange of viewpoints on the issue through the process of *en banc* review.[15] The primary case Robinson relies on for making an exception, *Jackson v. Modly*, 949 F.3d 763 (D.C. Cir. 2020), recognized that this Court's precedent applying 28 U.S.C. § 2401(a) had been overruled by the Supreme Court's decision in *United States v. Kwai Fun Wong*,

---

7703(b)(2) in light of *Irwin,* section 7703(b)(1) in no way implicates 42 U.S.C. § 2000e–16(c) and its placement alongside section 7703(b)(2) in the Code is of no concern. There is simply no equivalent relationship between Title VII and section 7703(b)(1) such that *Irwin* might support the equitable tolling of the time period in section 7703(b)(1).

405 F.3d at 1358, *reh'g en banc denied* (Fed. Cir. Aug. 30, 2005); *see Fedora v. Merit Sys. Prot. Bd.*, 848 F.3d 1013, 1016–17 (Fed. Cir. 2017) (treating section 7703(b)(1)'s deadline as jurisdictional and dismissing petition filed six days too late notwithstanding dissenting opinion).

[15]    Appellant correctly observes that the Court denied an initial petition for hearing *en banc*, but that does not preclude a petition for rehearing in this or any other future case following *King*.

575 U.S. 402 (2015), interpreting 28 U.S.C. § 2401(b). *Jackson*, 949 F.3d at 776, n.14 (using an *Irons* footnote). But there is no such analogue Supreme Court authority for section 7703, and the circumstances are significantly different than in *Jackson* because *Lindahl* controls and establishes that section 7703(b) jurisdictional. Also, section 2401(a) does not contain the key "notwithstanding any other provision of law" language of section 7703(b), and that clause appears in other statutes this Court has considered. Although *Jackson* harmonized this Court's application of section 2401(a) based on the Supreme Court's ruling with respect to language in an adjoining subsection of the same statute, overruling *King* creates tension with the Federal Circuit and is contrary to binding Supreme Court precedent. *See also Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999) (citing *King* for the proposition that Section 7703(b)(2) is a jurisdictional time bar).

Thus, Appellant's argument for expedited and shadow treatment of reconsideration of *King*'s ongoing vitality misperceives the landscape in which the issue arises and how reversing such a holding could impact this Court's development of the law applying the Civil Service Reform Act more broadly. Further counseling against rushing through an *Irons* footnote is that the Supreme Court may soon provide additional guidance on whether timing and exhaustion provisions found in statutory provisions with jurisdictional overtones in *Santos-Zacaria v. Garland*,

No. 21-1436 (U.S. argued Jan. 17, 2023) (concerning the Immigration and Nationality Act).

Accordingly, this Court should not overrule *King* using an *Irons* footnote.

### 3. An *Irons* Footnote Is Unwarranted Because the Authorities Appellant Cites Are Outweighed by *Stare Decisis* Based on *Lindahl* As Well As Other Decisions By this Court Applying Section 7703(b).

Despite the Inspector General moving to dismiss based on the holding in *King*, Robinson's Opposition (R.28) and purported Errata (R.30) below did *not* address whether the 30-day deadline set by 5 U.S.C. § 7703(b)(2) is jurisdictional. On appeal, he argues that *Irwin*, 498 U.S. at 89, and subsequent decisions following *Irwin*'s distinction between claims processing rules and jurisdictional conditions compel revising the view of section 7703(b)'s time limit as not jurisdictional. But the timing provisions in Title VII, addressed in *Irwin*, and the Federal Tort Claims Act, examined in *Kwai Fun Wong,* 575 U.S. at 402, do not contain the "notwithstanding any other provision of law" language found in section 7703(b), and Appellant's argument is unconvincing because it fails to explain all of the words in section 7703(b)(2), and ignoring the phrase differentiating section 7703(b) from Title VII or other statutes would not be permitted on review.[16]  *See Oklahoma v.*

---

[16]    Generally, "the more natural reading of the statute's text, which would give effect to all of its provisions, always prevails over a mere suggestion to disregard or ignore duly enacted law as legislative oversight." *United Food & Commercial*

*Castro-Huerta*, 142 S. Ct. 2486, 2496–97 (2022) ("The Court may not 'replace the actual text with speculation as to Congress' intent.' Rather, the Court 'will presume more modestly' that 'the legislature says what it means and means what it says.'" (citations omitted); *see generally Babb v. Wilkie*, 140 S. Ct. 1168, 1172 (2020).

Appellant's brief points to *Montoya v. Chao*, 296 F.3d 952 (10th Cir. 2002), which found equitable tolling available under section 7703(b)(2) because the provision is not jurisdictional and insufficiently clear that Congress intended equitable tolling was disallowed. *Id.* at 955–57.[17] The Tenth Circuit commented that Congress remained free to amend the statute to make it plainer and settle what the court identified as a Circuit split in 2002 on this issue. *Id*. at 957 n.2. With due respect, that analysis is backwards. Congress has now been passing statutes for over two hundred years and covering a vast array of areas and subjects, often in

---

*Workers Union Local 751 v. Brown Group, Inc.*, 116 S. Ct. 1529, 1533 (1996). "[T]he Court will avoid a reading which renders some words altogether redundant." *Gustafson v. Alloyd Co*., 513 U.S. 561, 574 (1995).

[17]    In *Nunnally v. MacCausland*, 996 F.2d 1 (1st Cir. 1993), the opinion specifically notes (at *3) that the government did not raise arguments it might have, which may have deprived the First Circuit of the benefit of the adversarial process. And like *Montoya*, the First Circuit did not have the same precedents interpreting similar statutory language that this Court should consider. *Dean v. Veterans' Administration Regional Office*, 943 F.2d 667 (6th Cir 1991), addressed whether delivery of the complaint together with an application to proceed *in forma pauperis* within the time provided by section 7703(b)(2) is sufficient, and that issue is not presented in this case.

considerable detail, and addressing every scenario in statutory text is impractical. Envisioning such a high level of consistency and uniformity in drafting from a bicameral legislative body whose members turn over with some frequency before enforcing terms of ordinary meaning eschews the role of the courts to interpret the statute as written until Congress amends the statute. Notably, Montoya also claimed to have been misdirected (by federal agencies rather than the clerk of court), and the Sixth Circuit denied his claim for equitable tolling. *Id.* at 958. In that sense, *Montoya* supports the Inspector General's argument that equitable tolling is unwarranted in this case.

For all these reasons, the Court should decline Robinson's request to overrule *King* other than through *en banc* review or the Supreme Court revisits and overturns its own precedent in *Lindahl*.

\* \* \*

## CONCLUSION

This Court should affirm the judgment of the District Court.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

R. CRAIG LAWRENCE
Assistant United States Attorney

 /s/ *Jane M. Lyons*
JANE M. LYONS
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2540
Jane.Lyons@usdoj.gov

Dated:  January 20, 2023

## CERTIFICATE OF COMPLIANCE
### (Fed. R. App. P. 32(g)(1))

The text for this Brief of Appellee is prepared using Times New Roman 14-point font, and—omitting those items described in Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1)—contains 8,882 words, as counted by Microsoft Word 2016.

*/s/ Jane M. Lyons*
JANE M. LYONS
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, this 20th day of January 2023, I caused a copy of the foregoing Brief for Appellee to be served on counsel for Appellant by this Court's electronic filing system.  Appellant has counsel who are registered users.

*/s/ Jane M. Lyons*
JANE M. LYONS
Assistant United States Attorney