**Oral argument scheduled for April 17, 2023**

**No. 22-5093**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

Adam Robinson,

Plaintiff-Appellant,

v.

Department of Homeland Security Office of Inspector General,

Defendant-Appellee.

_____

On Appeal from a Final Judgment of the
United States District Court for the District of Columbia
No. 20-cv-2021, Judge Christopher R. Cooper

_____

**REPLY BRIEF FOR PLAINTIFF-APPELLANT ADAM ROBINSON**

_____

Charles Tucker, Jr.
TUCKER MOORE GROUP, LLP
8181 Professional Place, Suite 117
Hyattsville, MD 20785
(301) 577-1175

Ciara Cooney
Rachel Danner
Chun Hin Tsoi
   Student Counsel

Brian Wolfman
Esthena L. Barlow
Madeline Meth
GEORGETOWN LAW APPELLATE
  COURTS IMMERSION CLINIC
600 New Jersey Ave., NW,
  Suite 312
Washington, D.C. 20001
(202) 661-6582

Counsel for Appellant Adam Robinson

March 9, 2023

## Table of Contents

Table of Authorities ................................................................. ii

Glossary ............................................................................. viii

Summary of Argument ............................................................ 1

Argument ............................................................................ 2

I.    *King v. Dole* should be abrogated via an *Irons* footnote............................. 2

    A.    *King* should be overruled, and the Government's contrary
    arguments lack merit.................................................................. 2

    B.    *King*'s validity is an important question that should be
    addressed now. ....................................................................... 6

    C.    The Government fails to demonstrate the need for full en banc
    review. ................................................................................. 7

    D.    This Court does not have jurisdiction to address equitable
    tolling unless it first overrules *King*. ........................................... 10

II.   Robinson is entitled to equitable tolling on the current record. ............. 12

    A.    The district court's discussion of equitable tolling is dicta, and
    this Court should decide the issue in the first instance. ..................... 13

    B.    Robinson is entitled to equitable tolling................................... 15

Conclusion............................................................................ 19

Certificate of Compliance .........................................................

Certificate of Service ...............................................................

# Table of Authorities[*]

**Page(s)**

**Cases**

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006)......................................................................................4, 8

*Arellano v. McDonough*,
  143 S. Ct. 543 (2023)...........................................................................................2

*Bender v. Williamsport Area Sch. Dist.*,
  475 U.S. 534 (1986).........................................................................................10

*Benoit v. Dep't of Agric.*,
  608 F.3d 17 (D.C. Cir. 2010)......................................................................9, 10

*Blaney v. United States*,
  34 F.3d 509 (7th Cir. 1994)................................................................................5

*Boechler, P.C. v. Comm'r*,
  142 S. Ct. 1493 (2022)..................................................................1, 2, 3, 4, 8, 9

*Brooks v. Derwinski*,
  741 F. Supp. 963 (D.D.C. 1990) ....................................................................16

*Broudy v. Mather*,
  460 F.3d 106 (D.C. Cir. 2006).........................................................................11

*Capitol Servs. Mgmt., Inc. v. Vesta Corp.*,
  933 F.3d 784 (D.C. Cir. 2019).........................................................................13

*Chambers v. District of Columbia*,
  988 F.3d 497 (D.C. Cir. 2021), *rev'd en banc*, 35 F.4th 870 (D.C.
  Cir. 2022).........................................................................................................10

---

[*] Authorities upon which we chiefly rely are marked with asterisks.

*Coal River Energy, LLC v. Jewell*,
    751 F.3d 659 (D.C. Cir. 2014)................................................................11, 12

*Critical Mass Energy Project v. Nuclear Regul. Comm'n*,
    975 F.2d 871 (D.C. Cir. 1992) (en banc) ...........................................4

*Dean v. Veterans Admin. Reg'l Off.*,
    943 F.2d 667 (6th Cir. 1991), *vacated on other grounds*, 503 U.S.
    902 (1992) ...........................................................................................5

*Donald v. Pruitt*,
    853 F. App'x 230 (10th Cir. 2021) ..........................................17, 18

*Dunn v. Baca*,
    No. 19-cv-00702, 2020 WL 2525772 (D. Nev. May 18, 2020) ....................17

*Dyson v. District of Columbia*,
    710 F.3d 415 (D.C. Cir. 2013)..............................................................14

*Ege v. U.S. Dep't of Homeland Sec.*,
    784 F.3d 791 (D.C. Cir. 2015)..............................................................11

*Fedora v. Merit Sys. Prot. Bd.*,
    848 F.3d 1013 (Fed. Cir. 2017) ............................................................8

*Ferrell v. Fudge*,
    No. 21-cv-01412, 2023 WL 2043148 (D.D.C. Feb. 16, 2023) .................16, 18

*Gonzalez v. Thaler*,
    565 U.S. 134 (2012)...........................................................................8, 9

*Hamer v. Neighborhood Hous. Servs. of Chi.*,
    138 S. Ct. 13 (2017)..............................................................................7

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
    322 U.S. 238 (1944)...........................................................................19

*Henderson ex rel. Henderson v. Shinseki*,
    562 U.S. 428 (2011)...........................................................................3, 6

*Holland v. Florida,*
    560 U.S. 631 (2010)...................................................................15, 19

*\*Irwin v. Dep't of Veterans Affs.,*
    498 U.S. 89 (1990)...................................................................1, 2, 3, 6

*Jackson v. Modly,*
    949 F.3d 763 (D.C. Cir. 2020)................................................4, 11

*Jackson v. Off. of the Mayor of D.C.,*
    911 F.3d 1167 (D.C. Cir. 2018)................................................11, 13

*Janczewski v. Sec'y, Smithsonian Inst.,*
    767 F. Supp. 1 (D.D.C. 1991) .......................................................16

*Janus v. AFSCME, Council 31,*
    138 S. Ct. 2448 (2018)....................................................................3

*Jarell v. U.S. Postal Serv.,*
    753 F.2d 1088 (D.C. Cir. 1985)....................................................18

*Joseph v. United States,*
    505 F. Supp. 3d 977 (N.D. Cal. 2020) .........................................17

*Kaplan v. Cent. Bank of the Islamic Republic of Iran,*
    896 F.3d 501 (D.C. Cir. 2018).......................................................11

*Kloeckner v. Solis,*
    568 U.S. 41 (2012)...........................................................................9

*Kramer v. Gates,*
    481 F.3d 788 (D.C. Cir. 2007)................................................11, 12

*Lindahl v. Off. of Pers. Mgmt.,*
    470 U.S. 768 (1985).........................................................................7

*Martin v. Ford Motor Co.,*
    No. 21-6089, 2022 WL 17076782 (6th Cir. Aug. 23, 2022) ...........17

iv

*McGraw v. Nutter*,
   No. 20-cv-0265, 2020 WL 7425308 (D. Md. Dec. 18, 2020)........................17

*Menominee Indian Tribe of Wis. v. United States*,
   577 U.S. 250 (2016)....................................................................................15

*Menominee Indian Tribe of Wis. v. United States*,
   764 F.3d 51 (D.C. Cir. 2014), *aff'd*, 577 U.S. 250 (2016) ...............................14

*Momenian v. Davidson*,
   878 F.3d 381 (D.C. Cir. 2017)......................................................................15

*\*Mondy v. Sec'y of Army*,
   845 F.2d 1051 (D.C. Cir. 1988).....................................................................14

*Mondy v. Sec'y of Army*,
   No. 85-cv-3439, 1986 WL 15320 (D.D.C. Oct. 31, 1986)...............................14

*Monroe v. United States*,
   No. 17-cr-11, 2020 WL 6547646 (E.D. Va. Nov. 6, 2020) ............................17

*Montoya v. Chao*,
   296 F.3d 952 (10th Cir. 2002).........................................................................5

*Mowrer v. U.S. Dep't of Transp.*,
   14 F.4th 723 (D.C. Cir. 2021) ......................................................................11

*Norman v. United States*,
   467 F.3d 773 (D.C. Cir. 2006).................................................................11, 12

*Nunnally v. MacCausland*,
   996 F.2d 1 (1st Cir. 1993)...............................................................................5

*Oja v. Dep't of Army*,
   405 F.3d 1349 (Fed. Cir. 2005).......................................................................5

*Pace v. DiGuglielmo*,
   544 U.S. 408 (2005)....................................................................................15

*Sebelius v. Auburn Reg'l Med. Ctr.*,
568 U.S. 145 (2013)..............................................................................3

*Smith v. Holder*,
806 F. Supp. 2d 59 (D.D.C. 2011)......................................................16

*Smith-Haynie v. District of Columbia*,
155 F.3d 575 (D.C. Cir. 1998)............................................................14

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)....................................................................8, 10, 11

*United States v. Kwai Fun Wong*,
575 U.S. 402 (2015)....................................................................2, 3, 4, 8

*Ware v. Frank*,
No. 90-7423, 1992 WL 19861 (E.D. Pa. Jan. 30, 1992), *aff'd*, 975
F.2d 1552 (3d Cir. 1992) (unpublished table decision) ..............5

*Washington v. Garrett*,
10 F.3d 1421 (9th Cir. 1993)................................................................5

*Young v. Sec. & Exch. Comm'n*,
956 F.3d 650 (D.C. Cir. 2020).....................................................15, 18

*Zipes v. Trans World Airlines, Inc.*,
455 U.S. 385 (1982)................................................................................8

**Statutes and Rules**

5 U.S.C. § 7703(b)(1) .......................................................4, 7, 8, 9, 16

5 U.S.C. § 7703(b)(2) ............................... 1, 3, 4, 5, 6, 7, 8, 9, 16

26 U.S.C. § 6330(d)(1)...........................................................................8

28 U.S.C. § 2253(c)(1) ...........................................................................9

28 U.S.C. § 2253(c)(2) ...........................................................................9

28 U.S.C. § 2253(c)(3) ....................................................................9

42 U.S.C. § 2000e-16(c) ............................................................5, 16

Fed. R. App. P. 3(c)(1) ................................................................16

Fed. R. App. P. 15(a)(2) ...............................................................16

## Other Authorities

Brief for the Respondent, Santos-Zacaria v. Garland,
   No. 21-1436 (U.S. Dec. 19, 2022) ...............................................3

Policy Statement on En Banc Endorsement of Panel Decisions
   (Jan. 17, 1996), https://perma.cc/7W33-A4WH ......................2, 5

*Sutherland Statutes and Statutory Construction* (8th ed. 2022) ...........5

## Glossary

| | |
|---|---|
| Joint Appendix | JA |
| Merit Systems Protection Board | MSPB |
| Civil Service Reform Act | CSRA |

## Summary of Argument

Adam Robinson called the district court clerk's office during the onset of the COVID-19 pandemic to clarify filing procedures for his federal complaint, which challenged a Merit Systems Protection Board decision under 5 U.S.C. § 7703(b)(2). After receiving inaccurate information from the clerk, Robinson mailed the complaint, and it arrived one day late. Robinson is entitled to equitable tolling on the current record, so this Court cannot, as the Government casually suggests, dispose of this case by assuming jurisdiction and then rejecting Robinson's claim on its merits.

**I.** *King v. Dole* is the kind of decision that may be abrogated via this Court's *Irons* policy. It is clearly an incorrect statement of current law in light of three decades of intervening Supreme Court precedent—bookended by *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), and *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493 (2022)—and the combined weight of authority from other circuits. Moreover, the question whether Section 7703(b)(2) is a claim-processing rule is too important to leave for another day, and this case presents an ideal vehicle for reconsidering *King*.

**II.** Robinson demonstrated the reasonable diligence required for equitable tolling when, acting pro se, he prepared his complaint within an unusually short filing period and called the clerk for clarification on filing requirements during the COVID-19 pandemic. The clerk informed him that filing deadlines were not being strictly enforced during the pandemic,

1

causing him to mail his complaint instead of delivering it in person or otherwise ensuring its receipt by the due date. This erroneous advice thwarted his diligent efforts and created an extraordinary circumstance entitling him to one day of forbearance.

## Argument

**I.** *King v. Dole* **should be abrogated via an** *Irons* **footnote.**

### A. *King* should be overruled, and the Government's contrary arguments lack merit.

**1.** Intervening Supreme Court decisions demonstrate that *King* "is clearly an incorrect statement of current law." *See* Policy Statement on En Banc Endorsement of Panel Decisions (Jan. 17, 1996) (Policy Statement).[1] In an unbroken series of decisions from 1990 to 2022, the Supreme Court has held that, unless Congress clearly provides otherwise, statutory time limits are nonjurisdictional, claim-processing rules presumptively subject to equitable tolling. *See, e.g., Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95-96 (1990); *United States v. Kwai Fun Wong*, 575 U.S. 402, 409-10 (2015); *Boechler, P.C. v. Comm'r*, 142 S. Ct. 1493, 1497-1500 (2022); *cf. Arellano v. McDonough*, 143 S. Ct. 543, 548-49 (2023) (reiterating that federal statutes of limitations are presumptively subject to equitable tolling, but holding that sixteen detailed exceptions to the statute's default timing rule created a congressional clear statement rebutting the presumption).

---

[1] Available at https://perma.cc/7W33-A4WH.

2

As our opening brief explains (at 11-12), Congress did not "clearly state[]" that the limitation period in Section 7703(b)(2) is jurisdictional, *Boechler*, 142 S. Ct. at 1497, because it did nothing "special, beyond setting an exception-free deadline," *Kwai Fun Wong*, 575 U.S. at 410. These types of exception-free deadlines are "quintessential claim-processing rules," which simply instruct the plaintiff to take a procedural step by a specified time. *Id.*; *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011); *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013).[2]

**2.** The Government does not directly argue that Section 7703(b)(2)'s time period is jurisdictional. *See* Resp. Br. 29-35. It gestures to stare decisis but fails to conduct any stare decisis analysis, *see, e.g., Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2478-85 (2018), which *King* would fail, *see Irwin*, 498 U.S. at 94-95. In particular, the Government does not claim that any reliance interests would be undermined. *See, e.g., Janus*, 138 S. Ct. at 2484. And, in any case, stare decisis applies with less force at the circuit-court level because,

---

[2] The Government vaguely suggests that overruling *King* via an *Irons* footnote would be "rush[ed]" because of the pendency in the Supreme Court of *Santos-Zacaria v. Garland*, No. 21-1436 (U.S. argued Jan. 17, 2023), which the Government claims concerns "timing and exhaustion provisions." *See* Resp. Br. 32-33. The case does not concern "timing" at all, let alone a statutory time period. It involves, among other things, whether an exhaustion provision in federal immigration law is jurisdictional. Brief for the Respondent at 11-13, Santos-Zacaria v. Garland, No. 21-1436 (U.S. Dec. 19, 2022). And the Government there expressly embraced the post-*Irwin* requirement that, to qualify as a jurisdictional bar, a statutory prescription must contain a clear statement "mark[ing] the bounds of a 'court's adjudicatory authority.'" *Id.* at 14 (quoting *Boechler*, 142 S. Ct. at 1497).

unlike the Supreme Court, "[c]ircuit courts do not establish the ultimate judicial precedent for the application of a federal statute." *Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871, 876 (D.C. Cir. 1992) (en banc). Thus, relying on *Kwai Fun Wong*, this Court recently overruled precedent treating a "statute of limitations as jurisdictional" via an *Irons* footnote. *Jackson v. Modly*, 949 F.3d 763, 776 & n.14 (D.C. Cir. 2020).

**3.** The Government does not dispute our characterization of the Supreme Court's post-*Irwin* rulings. It observes only that Section 7703(b)(2) is different from the filing periods at issue in recent Supreme Court precedent because it begins with the phrase "notwithstanding any other provision of law." *See* Resp. Br. 33-34. But the Government does not explain the relevance of this language to the question presented here—and there is none.

For starters, the notwithstanding clause does not satisfy the clear-statement rule because it does not "speak in jurisdictional terms or refer in any way to the jurisdiction of the … courts," *Kwai Fun Wong*, 575 U.S. at 411 (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)), or demonstrate a congressional desire to eliminate equitable tolling, *see Boechler*, 142 S. Ct. at 1500.

Instead, by using the "notwithstanding" language, Congress is telling us that we shouldn't look elsewhere for a time period of some other character or duration. For instance, Section 7703(b)(2)'s 30-day period applies to mixed cases *notwithstanding* the 60-day period for challenging CSRA-only MSPB decisions under Section 7703(b)(1) or the 90-day period for a federal

employee to file a Title VII-only suit under 42 U.S.C. § 2000e-16(c). In sum, a "'notwithstanding' clause merely excepts enumerated provisions that otherwise conflict." 3C *Sutherland Statutes and Statutory Construction* § 76:8 (8th ed. 2022).

**4.** The Government's effort to dodge an *Irons* footnote further collapses under the "combined weight" of post-*Irwin* authority "from other circuits" holding that Section 7703(b)(2)'s limitation period is not jurisdictional and is presumptively subject to equitable tolling. Policy Statement at 1.[3]

The Government does not (and cannot) dispute these circuit holdings. It does, however, launch a belabored critique of the Tenth Circuit, disparaging as "backwards" that court's statement that "Congress remained free to amend" Section 7703(b)(2) to render it jurisdictional. *See* Resp. Br. 34-35 (citing *Montoya v. Chao*, 296 F.3d 952, 957 n.2 (10th Cir. 2002)). There is nothing "backwards" about it. That's the way a *presumption* works, and it bears noting that *Montoya* mirrors almost exactly *Irwin*'s holding that

---

[3] *See Nunnally v. MacCausland*, 996 F.2d 1, 4 & n.5 (1st Cir. 1993); *Blaney v. United States*, 34 F.3d 509, 513 (7th Cir. 1994); *Washington v. Garrett*, 10 F.3d 1421, 1437 (9th Cir. 1993); *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002); *see also Ware v. Frank*, No. 90-7423, 1992 WL 19861, at *2 (E.D. Pa. Jan. 30, 1992), *aff'd*, 975 F.2d 1552 (3d Cir. 1992) (unpublished table decision); *Oja v. Dep't of Army*, 405 F.3d 1349, 1358 (Fed. Cir. 2005) (recognizing "the obvious relationship between Title VII and section 7703(b)(2) may very well support the equitable tolling of section 7703(b)(2)"). *But see Dean v. Veterans Admin. Reg'l Off.*, 943 F.2d 667, 670 (6th Cir. 1991) (affirming Section 7703(b)(2) as jurisdictional under Sixth Circuit precedent but noting that, post-*Irwin*, "[i]f we were writing on a clean slate, we might well be persuaded" otherwise), *vacated on other grounds*, 503 U.S. 902 (1992).

Congress "may provide otherwise if it wishes" to rebut the presumption. *Irwin*, 498 U.S. at 95. The Government's focus on irrelevancies in the remaining circuit decisions, *see* Resp. Br. 34 n.17, tacitly acknowledges that refusing to take up *King*'s validity would leave this Court at odds with circuits that have addressed Section 7703(b)(2)'s limitation period post-*Irwin*.

## B. *King*'s validity is an important question that should be addressed now.

The question whether Section 7703(b)(2)'s time limit is jurisdictional, like the many similar questions the Supreme Court has reviewed in recent years, *see* Pet. for Initial Hr'g En Banc 13 & n.4, is "of considerable practical importance for judges and litigants," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). The Government itself acknowledges that whether *King* remains good law is important. *See* Resp. Br. 31 (observing that reconsideration of *King* would "benefit from the robust development of full briefs" en banc).

The question presented affects many federal employees. The MSPB decides a large number of "mixed cases" like Robinson's, which both challenge an adverse personnel decision under the CSRA and raise a discrimination claim.[4] Section 7703(b)(2)'s 30-day time period applies to district-court review of each of those decisions. If *King* is allowed to stand,

---

[4] A LexisNexis search of the phrase "mixed case" in MSPB decisions citing Section 7703(b)(2) reveals 271 decisions issued between January 1, 2021 and December 31, 2022. This estimate is conservative because not all decisions in "mixed cases" include that phrase.

federal employees' rights to be heard in federal court may be abridged, even when the Government has waived a tardiness defense or the employee would otherwise be entitled to tolling. *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 22 (2017).

This case presents an ideal vehicle for considering *King*'s validity, because the district court dismissed the case based solely on a lack of subject-matter jurisdiction. If, as we maintain, *King* is no longer good law, federal employees are entitled to that determination now before it does further damage.

### C. The Government fails to demonstrate the need for full en banc review.

The Government argues that employing an *Irons* footnote would be inappropriate because the question presented is not "straightforward." Resp. Br. 30. The Government relies principally on *Lindahl v. Office of Personnel Management*, 470 U.S. 768 (1985), which, it asserts, "held" that the entirety of "section 7703(b) grants jurisdiction." Resp. Br. 30.

That is flatly incorrect. *Lindahl*'s only *holding* was that the Federal Circuit (pursuant to Section 7703(b)(1)), and not a trial-level court, was the appropriate first-instance judicial forum for certain federal-retiree claims. 470 U.S. at 799. *Lindahl* did not hold that the filing period in Section 7703(b)(1) is jurisdictional (and did not even mention the filing period at issue here, in Section 7703(b)(2)). To be sure, *Lindahl* made loose references indicating that the first sentence of Section 7703(b)(1)—the sentence *not*

7

containing its time limit—is "jurisdictional." *Id.* at 792. This dicta has no bearing on whether *King* is clearly an incorrect statement of current law regarding Section 7703(b)(2)'s time limit.

To begin with, *Lindahl*'s offhand discussion of Section 7703(b)(1) is an artifact of an earlier era, before the Supreme Court prescribed a disciplined and meticulous use of the "jurisdictional" moniker. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006); *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015); *Boechler, P.C. v. Comm'r*, 142 S. Ct. 1493, 1499 (2022). *Lindahl*'s casual language is precisely the kind of "drive-by" jurisdictional reference that "should be accorded 'no precedential effect.'" *Arbaugh*, 546 U.S. at 510 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)). *But see Fedora v. Merit Sys. Prot. Bd.*, 848 F.3d 1013, 1015-16 (Fed. Cir. 2017) (holding that the time limit in Section 7703(b)(1) is jurisdictional).

Second, as noted, *Lindahl* does not address Section 7703(b)(2) at all. Regardless of *Lindahl*'s significance as to Section 7703(b)(1), the "[m]ere proximity" of subsection (b)(1) to (b)(2) "will not turn a rule that speaks in nonjurisdictional terms into a jurisdictional hurdle." *Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012); *see also Boechler*, 142 S. Ct. at 1499; *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-94 (1982). The Supreme Court's disciplined approach may require "pars[ing] a single statutory sentence to distinguish between its jurisdictional and nonjurisdictional elements." *Boechler*, 142 S. Ct. at 1499. Thus, in *Boechler*, the Court explained that the language in 26 U.S.C. § 6330(d)(1)—"the Tax Court shall have jurisdiction with respect to such

matter"—is jurisdictional, but the filing deadline in the same sentence is not. 142 S. Ct. at 1497-99; *see also Gonzalez*, 565 U.S. at 142-43 (finding jurisdictional one provision of the federal habeas statute, 28 U.S.C. § 2253(c)(1), while finding nonjurisdictional two other provisions in the same sentence, 28 U.S.C. § 2253(c)(2)-(3)). Indeed, the Supreme Court has itself differentiated between Section 7703(b)(2)'s two sentences. *See Kloeckner v. Solis*, 568 U.S. 41, 52-53 (2012). The first "defines which cases should be brought in district court, rather than in the Federal Circuit," while the second is "nothing more than a filing deadline" and does not "further define which timely-brought cases belong in district court." *Id.*

Despite all this, the Government asserts that past understandings of Section 7703(b)(1) are relevant to this Court's reconsideration of *King*. On this score, the Government invokes *Benoit v. Department of Agriculture*, 608 F.3d 17 (D.C. Cir. 2010), where, it says, "this Court" "reaffirmed that, even after *Irwin*," the time period "in section 7703(b)(1) remains jurisdictional." Resp. Br. 30.

That is inaccurate. We are not aware of any post-*Irwin* decision of this Court that addresses the question whether Section 7703(b)(1)'s time period is jurisdictional. *Benoit* did not concern Section 7703(b) or any statutory deadline at all. If anything, *Benoit* tacitly endorsed the post-*Irwin* clear-statement approach to statutory procedural prescriptions. The parties there agreed that a failure to exhaust under the Equal Credit Opportunity Act "did not deprive the district court of jurisdiction," and this Court then held that

9

the plaintiff's failure to exhaust would not be excused, without even suggesting that the Act's exhaustion requirement is jurisdictional. *Id.* at 22-23.[5]

### D. This Court does not have jurisdiction to address equitable tolling unless it first overrules *King*.

The Government blithely asks this Court to deny Robinson equitable tolling without assuring itself that it has jurisdiction to do so. Resp. Br. 13. That would not work because—as we reiterate below (at 12-19)—Robinson is entitled to equitable tolling. And as a matter of principle, that approach is at odds with *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), which held that federal courts generally must ensure that they have jurisdiction before reaching the merits. *Id.* at 94-95. *Steel Co.* thus denounced the practice of courts assuming "hypothetical jurisdiction" to dispose of a case on its merits. *Id.* at 94.

The order of decision suggested by the Government is improper. As long as *King* remains a binding precedent that deprives the district court of jurisdiction, this Court "ha[s] jurisdiction on appeal, not of the merits," but only to affirm the dismissal for lack of subject-matter jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). When a court has

---

[5] If the panel assigned to this appeal believes use of the *Irons* procedure is inadvisable, it should recommend full en banc review. *See Chambers v. District of Columbia*, 988 F.3d 497, 506 (D.C. Cir. 2021) (Tatel & Ginsburg, JJ., concurring) (calling for en banc review), *rev'd en banc*, 35 F.4th 870 (D.C. Cir. 2022).

"determined it [is] without jurisdiction," it has "no authority" to consider "alternative bases" for affirmance. *Jackson v. Off. of the Mayor of D.C.*, 911 F.3d 1167, 1171 (D.C. Cir. 2018); *see also Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020) (holding a statutory time limit nonjurisdictional before turning to equitable tolling); *Ege v. U.S. Dep't of Homeland Sec.*, 784 F.3d 791, 794 n.4 (D.C. Cir. 2015) (refusing to decide whether "reasonable grounds" excused an untimely filing because the court lacked jurisdiction).

We acknowledge that, in *Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007), this Court held that *Steel Co.* bars assumptions only of hypothetical Article III jurisdiction, not of statutory jurisdiction. *Kramer* did so even though *Steel Co.* understood subject-matter jurisdiction as "the courts' *statutory* or constitutional power to adjudicate the case." 523 U.S. at 89 (emphasis added). And multiple members of this Court view *Kramer* as in tension with *Steel Co.*[6]

Neither *Kramer* nor the two cases cited by the Government in which this Court assumed statutory jurisdiction apply here. *See* Resp. Br. 13 (citing *Coal River Energy, LLC v. Jewell*, 751 F.3d 659 (D.C. Cir. 2014); *Norman v. United States*, 467 F.3d 773 (D.C. Cir. 2006)). In *Kramer*, this Court assumed statutory

---

[6] *See, e.g.*, *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 517-20 (D.C. Cir. 2018) (Edwards, J., concurring); *Mowrer v. U.S. Dep't of Transp.*, 14 F.4th 723, 736-39 (D.C. Cir. 2021) (Katsas, J., concurring). This Court held pre-*Kramer* that, under *Steel Co.*, the district court's statutory jurisdiction must be addressed before the merits. *See Broudy v. Mather,* 460 F.3d 106, 111 (D.C. Cir. 2006).

jurisdiction under the Administrative Procedure Act when the question whether the district court awarded money damages and thereby exceeded its jurisdiction was disputed. *Kramer*, 481 F.3d at 790. In the Government's cases, this Court assumed statutory jurisdiction over untimely complaints when the question whether the time limits were jurisdictional had yet to be decided. *See Coal River Energy*, 751 F.3d at 663; *Norman*, 467 F.3d at 776.

These cases didn't involve a longstanding precedent, like *King*, that indisputably deprived the court of jurisdiction. *King* has been on the books for decades, and thus the district court held that Robinson's one-day-late filing is jurisdictionally barred. If this Court were to decide whether Robinson's circumstances warrant equitable tolling before it abrogates *King*, it would not just be assuming "hypothetical jurisdiction" but deciding the merits in the known absence of jurisdiction. This Court should not extend *Kramer*'s contested practice of assuming hypothetical statutory jurisdiction to this context. Instead, it should overrule *King* before considering equitable tolling—to which we now turn.

## II.   Robinson is entitled to equitable tolling on the current record.

Robinson has stated a claim for equitable tolling. In arguing otherwise, the Government downplays the impacts of the COVID-19 pandemic and misstates Robinson's tolling claim. *See* Resp. Br. 22-26. The events in question took place in the early months of the pandemic when uncertainty and disruption were at their highest. *See* Opening Br. at 17-18 (describing the

effects of the pandemic, including the Standing Order limiting the district court's operations). And the Government itself concedes that Robinson's conversation with the clerk influenced his efforts to timely file: "the most that can be said of the evidence in the record is that the Clerk's statement convinced Robinson that he could mail the pleading and risk it being a day or two (or more) late without consequence." Resp. Br. 26. Despite this acknowledgement, the Government somehow overlooks that, on a motion to dismiss, Robinson is entitled to "the most that can be said of the evidence in the record," with all of his facts taken as true and all reasonable inferences drawn in his favor. Robinson has thus stated a claim for equitable tolling.[7]

### A. The district court's discussion of equitable tolling is dicta, and this Court should decide the issue in the first instance.

The Government asserts that the district court "found in the alternative" that Robinson was not entitled to equitable tolling. Resp. Br. 1. That is not correct. Once the district court held that it was bound by *King* to dismiss for lack of jurisdiction, any further discussion of equitable tolling was "merely dict[a]" and "in no way 'essential to the judgment.'" *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 794 (D.C. Cir. 2019); *see also Jackson v. Off. of the Mayor of D.C.*, 911 F.3d 1167, 1171 (D.C. Cir. 2018).

---

[7] Contrary to the Government's contention, it is irrelevant that the Standing Order did not itself toll statutes of limitation. *See* Resp. Br. 11. The Standing Order did not (of course) abrogate equitable tolling when it would otherwise apply.

Because the district court's discussion was dicta, this Court can and should decide the equitable-tolling issue in the first instance. In *Mondy v. Secretary of Army*, the district court dismissed for lack of jurisdiction without considering whether the plaintiff, who had missed a filing deadline, was entitled to equitable tolling. No. 85-cv-3439, 1986 WL 15320, at *2-4 (D.D.C. Oct. 31, 1986). This Court reversed, holding that the filing period at issue was a nonjurisdictional statute of limitations and that "fairness demand[ed] that the statutory limit be tolled." *Mondy v. Sec'y of Army*, 845 F.2d 1051, 1054, 1057 (D.C. Cir. 1988). *Mondy* demonstrates that, in the absence of a district court holding on the issue, this Court has authority to determine in the first instance that Robinson has stated a claim for equitable tolling.

Even if the district court's discussion of equitable tolling were squarely before this Court, tolling claims like Robinson's have long been reviewed de novo. *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 & n.4 (D.C. Cir. 1998); *Dyson v. District of Columbia*, 710 F.3d 415, 420 (D.C. Cir. 2013). Neither of the cases that the Government cites in support of abuse-of-discretion review actually employ that standard. Resp. Br. 16; *see Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014) (acknowledging disagreement among the parties but finding that even under de novo review it would reach the same result as the district court), *aff'd*, 577 U.S. 250 (2016); *Dyson*, 710 F.3d at 420 (applying de novo review to resolve an equitable-tolling claim).

14

**B. Robinson is entitled to equitable tolling.**

At the motion-to-dismiss stage, Robinson's facts should be taken as true, with all reasonable inferences drawn in his favor. *Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017). His complaint may therefore be dismissed as "conclusively time-barred" only if "a trial court 'determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Id.* Equitable tolling is warranted because Robinson "pursu[ed] his rights diligently" and "some extraordinary circumstance stood in his way." *Young v. Sec. & Exch. Comm'n*, 956 F.3d 650, 655 (D.C. Cir. 2020) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

**1.** Robinson was sufficiently diligent in pursuing his rights. The diligence inquiry extends only to "those affairs within the litigant's control," *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016), and requires "reasonable diligence" rather than "maximum feasible diligence." *Holland v. Florida*, 560 U.S. 631, 653 (2010). Robinson demonstrated reasonable diligence in calling the clerk's office for instructions on how to file his completed complaint in the early stages of an unprecedented public-health crisis. JA 59, 70. He decided to mail his complaint after speaking with the clerk, who informed him that "filing deadlines during this period were not being strictly enforced due to the pandemic." JA 70. It is reasonable to infer that but for the clerk's statements Robinson might have personally delivered the complaint to the courthouse or otherwise ensured its timely delivery.

15

The limitations period for filing suit under Section 7703(b)(2) is unusually short. After his MSPB decision became final, Robinson, acting pro se, had just 30 days to take the next step. *Cf.* 5 U.S.C. § 7703(b)(1) (60 days to file a petition for review of a CSRA-only MSPB decision); 42 U.S.C. § 2000e-16(c) (90 days for a federal employee to file a Title VII-only suit). And he needed to do more than file a simple petition for review of agency action, as required for review under Section 7703(b)(1), or a notice of appeal indicating an appellant's desire to proceed. *See* Fed. R. App. P. 15(a)(2) (describing the minimal content requirements for a petition for review); Fed. R. App. P. 3(c)(1) (same for notice of appeal). Section 7703(b)(2) required Robinson to prepare a full-blown complaint and file it in federal court in 30 days.

Courts have granted equitable tolling when litigants subject to similar filing periods filed just one day late, and the delay caused no prejudice to the opposing party, because "an overly strict, technical application of Title VII's 30-day time limit" would be "inequitable and contrary to the remedial principles underlying Title VII." *Brooks v. Derwinski*, 741 F. Supp. 963, 965 (D.D.C. 1990); *see also Smith v. Holder*, 806 F. Supp. 2d 59, 64 (D.D.C. 2011); *Janczewski v. Sec'y, Smithsonian Inst.*, 767 F. Supp. 1, 6 (D.D.C. 1991). And, just last month, the district court tolled a 30-day time period because a one-day delay was not "so lengthy that it indicated a lack of due diligence" and no prejudice had resulted. *Ferrell v. Fudge*, No. 21-cv-01412, 2023 WL 2043148, at *6 (D.D.C. Feb. 16, 2023). In this case, the Government has not alleged any

16

prejudice, and Robinson's one day of tardiness does not demonstrate an inexcusable lack of diligence.

**2**. The misinformation Robinson received from the clerk's office regarding court procedures during the early stages of the COVID-19 pandemic constitutes an extraordinary circumstance. Judges around the country have recognized the impact of the pandemic on parties to legal proceedings and have granted tolling when delays can be tied specifically to the pandemic and related events. *See Joseph v. United States*, 505 F. Supp. 3d 977, 981 (N.D. Cal. 2020) ("It should go without saying that the current public health crisis and resulting restrictions on civil and personal life are extraordinary circumstances by any measure."); *McGraw v. Nutter*, No. 20-cv-0265, 2020 WL 7425308, at *4 (D. Md. Dec. 18, 2020) (granting tolling in light of the pandemic "and its attendant postal delays"); *see also* Opening Br. 17 (citing *Dunn v. Baca*, No. 19-cv-00702, 2020 WL 2525772, at *2 (D. Nev. May 18, 2020); *Monroe v. United States*, No. 17-cr-11, 2020 WL 6547646, at *3 (E.D. Va. Nov. 6, 2020)).

The Government nowhere disputes these precedents, but instead points to cases where litigants either lacked diligence or failed to show how the COVID-19 pandemic undercut their particular litigation efforts. Resp. Br. 23; *see, e.g.*, *Donald v. Pruitt*, 853 F. App'x 230, 234 (10th Cir. 2021) (declining to grant tolling because the plaintiff had "not explained why he was not diligent for the nine months before COVID restrictions were implemented"); *Martin v. Ford Motor Co.*, No. 21-6089, 2022 WL 17076782 (6th Cir. Aug. 23,

2022) (conceding that the COVID-19 pandemic and cessation of the EEOC's issuance of right-to-sue letters were beyond plaintiff's control, but denying tolling because the plaintiff had received his right-to-sue letter a month before the EEOC stopped issuing letters).

The situation here is quite different. Robinson did not wait months to prepare his complaint but completed it within the 30-day filing period, which began and ended during the early days of the pandemic. JA 59, 70; *cf. Donald*, 853 F. App'x at 234. And the existence of the pandemic was only a precipitating event, not the key exceptional circumstance that stood in his way. That is, the pandemic was the specific cause of his call to the clerk's office, during which he was misled as to the stringency of the filing deadline, and after which he chose to mail the complaint to the courthouse rather than go in-person and possibly put himself and others at risk.

Further, as our opening brief explains and the Government nowhere contests, misleading advice from court employees alone can be sufficient to toll filing periods. *See* Opening Br. 20 (citing cases). The district court clerk here did not, as the Government suggests, merely "fail to defray confusion." Resp. Br. 23 (citing *Young*, 956 F.3d at 657). The clerk Robinson spoke to was the *source* of the confusion, causing him to believe that mailing his complaint would suffice despite the possibility for mail-related delay. This Court itself has held that "justifiable reliance on the advice of another government officer" can be grounds for equitable tolling. *Jarell v. U.S. Postal Serv.*, 753 F.2d 1088, 1092 (D.C. Cir. 1985); *see also Ferrell*, 2023 WL 2043148, at *6

18

(granting equitable tolling of an appeal deadline when a pro se litigant sought but did not "obtain[] clarification" from an administrative official regarding the finality of her claims).

Nor does Robinson mistakenly rely on equitable estoppel, as the Government indicates. *See* Resp. Br. 20. Instead, he seeks to demonstrate the circumstances working against his diligent efforts to comply with the filing period. That is exactly the situation that equitable tolling seeks to address: "to 'relieve hardships … aris[ing] from a hard and fast adherence' to more absolute legal rules." *Holland*, 560 U.S. at 650 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944)).

## Conclusion

This Court should vacate the district court's judgment and remand for further proceedings.

Respectfully submitted,

Charles Tucker, Jr.                         /s/ Brian Wolfman
TUCKER MOORE GROUP, LLP                      Brian Wolfman
8181 Professional Place, Suite 117           Esthena L. Barlow
Hyattsville, MD 20785                        Madeline Meth
(301) 577-1175                               GEORGETOWN LAW APPELLATE
                                               COURTS IMMERSION CLINIC
Ciara Cooney                                 600 New Jersey Ave., NW,
Rachel Danner                                  Suite 312
Chun Hin Tsoi                                Washington, D.C. 20001
     Student Counsel                         (202) 661-6582

                                             Counsel for Appellant Adam Robinson

March 9, 2023

20

## Certificate of Compliance

This document complies with Federal Rule of Appellate Procedure 32(g)'s type-volume limitation. In compliance with Rule 32(a)(7)(B), it contains 4,828 words, excluding the parts exempted by Rule 32(f) and Circuit Rule 32(e)(1), and it has been prepared in a proportionally spaced typeface using Palatino Linotype, 14-point, in Microsoft Word 2016.

/s/Brian Wolfman
Brian Wolfman
Counsel for Appellant

**Certificate of Service**

I certify that, on March 9, 2023, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system. Eight paper copies of this brief will be filed with the Clerk of the Court.

/s/Brian Wolfman
Brian Wolfman

Counsel for Appellant